UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JAMES THOMAS, 97-B-1722,

                      Petitioner

                                                            DECISION AND ORDER

-vs-

                                                            03-CV-6193 CJS

MICHAEL P. MCGINNIS,
SUPERINTENDENT,

                      Respondent.

_____

APPEARANCES

| | |
|---|---|
| For the Petitioner: | James Thomas, *pro se*<br>Southport Correctional Facility<br>P.O. Box 2000<br>Pine City, New York 14871 |
| For the Respondent: | Paul J. Williams, III, Esq.<br>Assistant District Attorney<br>Office of the Erie County District Attorney<br>200 Erie County Hall<br>25 Delaware Avenue<br>Buffalo, New York 14202 |

INTRODUCTION

      James Thomas ("Petitioner") was convicted after a jury trial in Erie County Court, of Attempted Murder in the Second Degree, Assault in the First Degree, and Criminal Possession of a Weapon in the Fourth Degree. Petitioner now seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, vacating those convictions. For the reasons that follow, the application is denied and this action is dismissed.

1

BACKGROUND

The female victim in this case, S.L., was attacked in her home in the City of Buffalo on the evening of May 23, 1996.  The attacker stabbed S.L. in the throat and multiple times in the chest, leaving her in a pool of blood and clothed only in a nightshirt pushed up around her neck.  S.L. survived the attack and, after regaining consciousness, was able to make three telephone calls before police and ambulance crews arrived, including two calls to Emergency 911 and one call to her sister.  In one of the 911 calls and in the call to her sister, S.L. identified petitioner James Thomas, her brother-in-law, as the attacker.  According to S.L., petitioner, who had been walking to work, stopped by her home and asked if he could rest a few minutes and use the bathroom.  S.L. stated that some time later, petitioner attacked her with a knife and forcibly raped her.  A short time later petitioner was arrested at the bakery where he was employed in the City of Buffalo.  At that time police officers seized items of clothing from petitioner's work locker, including pants, a shirt, and a hooded sweatshirt.

Following a police investigation, an Erie County Grand Jury returned a five-count indictment against petitioner on July 18, 1996, charging him with Attempted Murder in the Second Degree in violation of New York Penal Law ("PL") § 110/125.25-1, Assault in the First Degree in violation of PL § 120.10-1, Assault in the First Degree  in violation of PL § 120.10-4, Rape in the First Degree in violation of PL § 130.35-1, and Criminal Possession of a Weapon in the Fourth Degree in violation of PL § 265.01-2.  The case was assigned to the Honorable Michael D'Amico ("Judge D'Amico"), Erie County Court Judge.

Petitioner's trial counsel moved to suppress the seizure of clothing from plaintiff's work locker.  The prosecution opposed the application, and maintained that the seizure of the clothing was lawful.  Following a hearing, Judge D'Amico denied the suppression motion. (*See*, Transcript of December 2, 1996 Suppression Hearing)

Petitioner also sought to suppress an oral statement that he made to police at police headquarters a few hours after his arrest.  Petitioner told police that he had been at S.L.'s house on the evening of the attack, and had left there to go to work at approximately 8:40 p.m.  He told police that he walked to the bakery where he worked, and he described the route that he walked to get there.   Petitioner also stated that along the way, he stopped and called the bakery from a pay phone at the intersection of Amherst and Bailey Streets, and said that he would be late in arriving.  Judge D'Amico denied the suppression motion. (*See*, Transcript of April 7, 1997 *Huntley* Hearing)

Prior to trial, petitioner's counsel requested a tape recording of S.L.'s Emergency 911 calls.  The prosecution informed defense counsel, based upon representations from the police, that the 911 tape had inadvertently been erased.  Immediately prior to the start of the trial, however, the prosecution discovered that the tape had not been erased, and provided it to the defense.  However, the prosecutor agreed not to use the tape at trial.

The trial ended in a mistrial after the jury could not reach a verdict.  A second trial was held beginning on June 2, 1997, at which the prosecution indicated that it intended to introduced the 911 call tape as evidence.  Defense counsel objected to the tape, stating, based only upon his memory of having heard the tape months earlier, that it had been altered since the first trial.  Defense counsel also objected to the tape on

3

the grounds that the prosecution had erroneously indicated, prior to the first trial, that the tape had been erased. The prosecutor stated that the tape had not been altered, and that the defense had notice of the tape from the first trial.(44-45) Judge D'Amico overruled the objection, finding no evidence that the tape had been altered, and also finding that the defense had adequate notice of the tape. (43-49)[1]

At trial, S.L. testified that she had known petitioner, her brother in law, about 28 years. She testified that on May 23, 1996, petitioner came to her home at about 9:00 p.m.. S.L. testified that petitioner told her that he had to be at work at 10:00 p.m., and that he used her telephone to call his employer to say that he would be late arriving at work. S.L. stated that she was seated on a couch watching television, when petitioner charged at her with a knife in his hand, saying, "You're going to give me some." (56, 76) She stated that petitioner punched her repeatedly, pulled down her pants, and had forcible sexual intercourse with her while continuing to punch her. S.L. stated that she lost consciousness, and when she awoke she was on the floor and bleeding from a stab wound to her neck and multiple stab wounds to her abdomen. (59) She called and spoke to a 911 operator, then called and spoke to her sister, then called 911 again. S.L. told her sister and the police that "Jamsieboy" had raped her, "Jamsieboy" being petitioner's nickname. (63)

A police forensic chemist then testified that a button found stuck to a bloody pillow at the crime scene appeared to match the buttons on the shirt taken from petitioner's work locker, which was missing a button from the left cuff. (146-47, 150).

---

[1] Unless otherwise noted, citations are to the Trial Transcript.

The forensic chemist also found blood on petitioner's shirt and hooded sweatshirt, as well as a "bright red chip of potentially polymeric material," presumably fingernail polish, on petitioner's shirt, that matched similar material found under the victim's fingernails. (147-49)  There was also blood on a key and a lighter in the pocket of petitioner's pants.  Chemical testing established that the blood on petitioner's shirt matched S.L.'s blood. (335-36)

The shift supervisor at petitioner's workplace testified that petitioner had called work on the evening of the attack and asked if he could come in late, that the request was granted, and that petitioner arrived at work shortly after 10:30 p.m..

The emergency room physician who treated S.L. testified that S.L. was brought into the hospital with "very serious" injuries, including a slash to the neck and multiple stab wounds, from which she would have likely died if she did not receive medical treatment. (213-16)[2]

Petitioner, who was previously convicted of Incest in violation of P.L. § 255.25, a Class E felony, did not testify.  Nor did the defense present any other witnesses. (352)  The defense moved to dismiss, arguing that the People had not proven a prima facie case, however Judge D'Amico denied the application.
(353)

The jury convicted petitioner of Attempted Murder in the Second Degree (Count 1), Assault in the First Degree (Count 2), and Criminal Possession of a Weapon in the

---

[2] Although petitioner suggests that the victim's injuries were minor, the record establishes that the victim was severely wounded and lost copious amounts of blood. (215-18)  In that regard, various police officers and emergency personnel testified that the crime scene was particularly bloody. (121, 128, 225-27, 281, 287, 305)

Fourth Degree (Count 5), and acquitted him of Assault in the First Degree (Count 3) and Rape (Count 4). Judge D'Amico sentenced petitioner, as a second felony offender, to 25 years for the attempted murder conviction, fifteen years for the assault conviction, and one year for criminal possession of a weapon, to be served concurrently.

Petitioner, represented by assigned counsel, appealed his conviction to the Supreme Court, Appellate Division, Fourth Department. On appeal, petitioner raised the following arguments: 1) the clothing stained with the victim's blood was improperly seized from his work locker; 2) the convictions were against the weight of the evidence, in violation of *People v. Bleakley*, 69 N.Y.2d 490, due to inconsistencies in the victim's testimony; and 3) the sentence was harsh and excessive. By Memorandum Order filed on March 31, 1999, the Appellate Division, Fourth Department, unanimously affirmed petitioner's convictions, noting, in relevant part:

> We reject the contention of defendant that his clothing, seized from his work locker, should be suppressed. . . . Defendant gave his co-worker and a police officer consent to open his locker to retrieve his jacket, and the blood-stained clothing seized from the locker was in plain view. The verdict is not against the weight of the evidence, and the sentence is neither unduly harsh nor severe.

*People v. Thomas*, 259 A.D.2d 997, 997, 688 N.Y.S.2d 305, 305 (4th Dept. 1999) (citations omitted). Petitioner, by his counsel, applied to the New York Court of Appeals for a certificate granting leave to appeal on May 3, 1999. In that request, petitioner only challenged the Appellate Division's ruling concerning the seizure of his clothing; he did not seek leave to appeal the rulings regarding the weight of the evidence or the reasonableness of the sentence. *See*, Exhibits to Respondent's Answer, Exhibit C, Petitioner's request (Discussing only the evidentiary issue, and referring to "the issue

6

raised."); and Respondent's Opposition ("The sole issue to be raised on appeal concerns the denial of defendant's motion to suppress."). The Court of Appeals denied petitioner's request on June 4, 1999. Petitioner, proceeding *pro se*, sought and was denied a Writ of Certiorari from the United States Supreme Court.[3] Again, the only issue that he sought to raise before the Supreme Court was the lawfulness of the search of his locker. *See*, Habeas Petition [#1], p. 3.

Subsequently, on or about June 1, 2000, petitioner filed a motion with the trial court pursuant to CPL § 440.10(c). In the motion, petitioner alleged that he was entitled to a new trial for essentially two reasons – prosecutorial misconduct involving the 911 tape, and ineffective assistance of trial counsel. Petitioner claimed that the prosecution's use of the 911 tape was improper, because at the first trial the prosecution had agreed not to use the tape. He also contended that the prosecution failed to establish that the tape was authentic. As for the second basis, petitioner alleged that trial counsel was ineffective for: 1) failing to keep the 911 tape out of evidence; 2) failing to object to the jury verdict as being repugnant; and 3) failing to properly present an alibi defense. Judge D'Amico denied the motion by Memorandum and Order dated March 27, 2001. Judge D'Amico noted that petitioner was procedurally barred from raising the claims in a CPL 440 motion, because they could have been raised in his direct appeal:

> Because defendant's present claims concerning the 911 tape are based exclusively upon matters of record and hence amenable to review on his

---

[3]The petition for writ of certiorari was denied on November 29, 1999.

> direct appeal, denial of his motion is mandated by CPL Section 440.10(2)[4]
> . . . .
>
> ***
>
> For the same reason, this Court may not entertain defendant's second ground for vacatur, namely that he did not receive the effective assistance of counsel. In support of this claim, defendant advances a litany of errors by his counsel, ranging from failure to obtain exclusion of the 911 tape from use at trial to failure to put forth a meaningful defense . . . . Virtually all of counsel's claimed deficiencies are matters of record; in fact, in his moving papers defendant states that he "relies on the court record" to support his claim that his representation was ineffective.

CPL 440 Motion Decision, pp. 3-4. Judge D'Amico further noted that petitioner's claim that his counsel had failed to pursue an alibi defense was also procedurally barred, because he had not made any evidentiary showing in support of the claim. *Id*. at 4. Petitioner, proceeding *pro se*, sought permission to appeal to the Appellate Division, Fourth Department, which denied the application on April 1, 2002.

Petitioner, proceeding *pro se*, filed a petition for a writ of error coram nobis with the Appellate Division, Fourth Department, on or about August 12, 2002, claiming ineffective assistance of appellate counsel. Specifically, petitioner alleged that his appellate counsel was ineffective for: 1) failing to challenge the use of the 911 tape at trial; 2) failing to argue the sufficiency of the evidence; and 3) failing to argue ineffective

---

[4] As the Second Circuit has noted, "New York law requires a state court to deny a motion to vacate a judgment based on a constitutional violation where the defendant unjustifiably failed to argue the constitutional violation on direct appeal despite a sufficient record. N.Y.Crim. Proc. Law § 440.10(2)(c). The purpose of this rule is to prevent Section 440.10 from being employed as a substitute for direct appeal when the defendant was in a position to raise an issue on appeal or could readily have raised it on appeal but failed to do so." *Sweet v. Bennett*, 353 F.3d 135, 139 (2d Cir. 2003) (*citing People v. Cooks*, 67 N.Y.2d 100, 103, 500 N.Y.S.2d 503, 505 (1986) (internal quotation marks omitted).

assistance of trial counsel.[5] The Appellate Division, Fourth Department, denied the motion for writ of error coram nobis without comment by order dated December 12, 2002. Petitioner applied to the New York Court of Appeals for a certificate pursuant to CPL § 460.20 on or about January 9, 2003. The Court of Appeals denied the application on March 14, 2003.

## ANALYSIS

*Standard of Review*

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996,("AEDPA"),

> a federal court cannot grant a writ of habeas corpus unless the state court's proceedings (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id*. § 2254(d)(2).

*Davis v. Greiner*, 428 F.3d 81, 87 (2nd Cir. 2005). In this regard,

> [a] decision is contrary to clearly established Federal law if it contradicts the governing law or if the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from the Supreme Court. An unreasonable application of federal law is more than an incorrect application, but the petitioner need not show that all reasonable jurists would agree that a state court determination is incorrect in order for it to be unreasonable. Instead, a federal court should review a state court's interpretation of federal law using a standard of objective reasonableness. The increment of incorrectness beyond error need not be great; otherwise, habeas relief would be limited to state court decisions so far off

---

[5] Petitioner alleged that trial counsel failed to object to prosecutorial misconduct, such as suggesting, based upon evidence of drug use in S.L.'s apartment, that petitioner had used cocaine before the crime. Petitioner also alleged that trial counsel should have objected to the court's answer to a question from the jury, and should have objected to the court's re-reading of a jury instruction.

the mark as to suggest judicial incompetence.

*Yung v. Walker*, 341 F.3d 104, 109 -10 (2d Cir. 2003). Moreover,

> [i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C.A. § 2254(e)(1).

*Failure to Exhaust and Procedural Default*

A petitioner must exhaust his judicial remedies with regard to each claim that he seeks to assert in a federal habeas proceeding. *Rose v. Lundy*, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203 (1982). The habeas statute provides that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the state; or . . . there is an absence of available State corrective process; or . . . circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1). To exhaust, a habeas petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 1732 (1999). Typically, this means that federal habeas claims must have been included in both the petitioner's appeal to the state's intermediate appellate court and in an application for permission to appeal to the state's highest court. *Id.*, 526 U.S. at 848, 119 S. Ct. at 1734. Failure to exhaust may be excused, however, if the petitioner shows "cause for

the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that failure to consider the claims will result in a fundamental miscarriage of justice." *Galdamez v. Keane*, 394 F.3d 68, 73 (2d Cir. 2005) (citations omitted), *cert den.* 125 S.Ct. 1996.

Respondent contends that the five claims set forth in the Petition [#1] are all unexhausted and therefore procedurally barred. After carefully reviewing the record, the Court agrees. As discussed earlier, the Petition alleges five constitutional errors: 1) insufficient evidence of attempted murder; 2) improper jury charge regarding attempted murder; 3) improper jury charge regarding assault; 4) prosecutorial misconduct; and 5) ineffective assistance of trial counsel. Petitioner did not raise any of these claims in his direct appeal from his conviction. In his CPL § 440 motion, petitioner raised numbers 4) and 5), however the state court found that the issues were procedurally barred.[6] In his coram nobis petition, petitioner again did not raise any of these five grounds, but instead alleged ineffective assistance of appellate counsel. The Court therefore finds that petitioner failed to exhaust his state court remedies as to the five issues set forth in the petition. Consequently, the Court may not consider these claims, unless petitioner has demonstrated both cause and prejudice for the procedural default.

Petitioner does not expressly allege cause or prejudice. However, he has alleged ineffective assistance of appellate counsel, which may, if proven, establish "cause" for a procedural default:

---

[6] Judge D'Amico found that "virtually all" of the claims were barred by by CPL § 440.10(2), since they were matters appearing in the record and plaintiff failed to raise them in his direct appeal. The only matter that did not appear in the record, the allegation that trial counsel failed to raise an alibi defense, was also procedurally barred, since petitioner submitted no evidence in support of the claim. *See*, CPL § Memorandum and Order, p. 4, n. 1.

11

> A defense counsel's ineffectiveness in failing to properly preserve a claim for review in state court can suffice to establish cause for a procedural default only when the counsel's ineptitude rises to the level of a violation of a defendant's Sixth Amendment right to counsel. *Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000); *Murray [v. Carrier]*, 477 U.S. [478,] 488-89, 106 S.Ct. 2639 [(1986)]. "In other words, ineffective assistance adequate to establish cause for the procedural default of some other constitutional claim is itself an independent constitutional claim." *Edwards*, 529 U.S. at 451, 120 S.Ct. 1587.

*Aparicio v. Artuz*, 269 F.3d 78, 91 (2d Cir. 2001). In that regard, while it is not one of the five issues set forth in the Petition [#1], it now appears from his supplemental filing [#14] that petitioner is attempting to raise the issue of ineffective assistance of appellate counsel. By way of explanation, on November 4, 2005, the undersigned wrote to petitioner and stated, in relevant part:

> The Court is very close to issuing a Decision and Order in this case, concerning your petition for writ of habeas corpus. So that there is no confusion, I read your petition as raising the following five claims: 1) insufficient evidence that you intended to kill the victim; 2) improper jury instruction regarding the attempted murder charge; 3) improper jury instruction regarding the assault charge; 4) prosecutorial misconduct; and 5) ineffective assistance of trial counsel. Although you raised the issue of ineffective assistance of appellate counsel in your petition for writ of error *coram nobis*, I do not read you habeas petition as stating such a claim.

*See* Attachments to Document [#15]. Petitioner responded by, *inter alia*, requesting permission to submit a supplemental briefing, which the Court granted. *See*, Decision and Order [#12]. In the supplemental briefing, petitioner raises arguments concerning the alleged ineffectiveness of appellate counsel. *See*, Supplementary Response [#14]. Consequently, the Court determines that petitioner exhausted his claim for ineffective assistance of appellate counsel and is asserting that claim as part of this action. However, for the reasons discussed below, the Court finds that petitioner has not

demonstrated that appellate counsel was ineffective, either as a separate claim or to establish cause for his procedural default.

The Court notes, at the outset, that because the New York State Supreme Court, Appellate Division Fourth Department, denied petitioner's coram nobis petition on the merits, this Court must apply the AEDPA's deferential standard of review discussed above. *Sellan v. Kuhlman*, 261 F.3d 303, 314 (2d Cir. 2001) ("There is no basis for believing that the Appellate Division rejected the claim on non-substantive grounds. Accordingly, we conclude that the Appellate Division's adjudication was "on the merits," and that we must therefore review that court's decision to deny Sellan's Sixth Amendment claim under the deferential standards prescribed in 28 U.S.C. § 2254(d)(1).")

Claims for ineffective assistance of counsel are analyzed under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). It is well settled that

> *Strickland* 's test for ineffective assistance of counsel consists of two separate prongs, both of which must be satisfied in order to establish a constitutional violation. A defendant must show both (1) that defense counsel's performance "fell below an objective standard of reasonableness ... under prevailing professional norms" and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Davis v. Greiner*, 428 F.3d at 87 (*Citing Strickland*, 466 U.S. at 688, 694). A substantial showing must be made on both of the two *Strickland* prongs. *Id*. When assessing the objective reasonableness of counsel's conduct under the first prong of the *Strickland* test, the court must "consider the circumstances counsel faced at the time of the relevant conduct and to evaluate the conduct from counsel's point of view," and must

13

also "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 88. With regard to the second prong of the *Strickland* test,

> [t]he burden is on the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. The level of prejudice [a petitioner] need demonstrate lies between prejudice that had some conceivable effect and prejudice that more likely than not altered the outcome in the case.

*Id*. at 90-91. Moreover, when evaluating the performance of appellate counsel,

> it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made. However, a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.
> ***
> When a claim of ineffective assistance of counsel is based on failure to raise viable issues, the district court must examine the trial court record to determine whether appellate counsel failed to present significant and obvious issues on appeal. Significant issues which could have been raised should then be compared to those which were raised. Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.

*Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (*quoting Gray v. Greer*, 800 F.2d 644, 646 (7th Cir.1985)).

Here, in his Supplementary Response [#14], petitioner alludes to various issues which he contends should have been raised on appeal by his appellate counsel. Liberally construing the *pro se* petitioner's submissions to raise the strongest arguments that they suggest, the Court finds that petitioner is alleging that appellate counsel was ineffective for failing to raise the following issues on appeal: 1) sufficiency of the

14

evidence of attempted murder; 2) improper jury instruction as to attempted murder; 3) improper jury instruction as to assault; and 4) ineffective assistance of trial counsel.  On the other hand, as mentioned earlier the issues that appellate counsel actually raised on petitioner's direct appeal were: 1) petitioner's blood-stained clothing should have been suppressed; 2) the convictions were against weight of the evidence; and 3) the sentence was unduly harsh and excessive.  The Court finds that the arguments urged by petitioner would not have been viable ones to raise on appeal, nor were they clearly stronger than the issues that appellate counsel raised.

For example, petitioner's first argument, that there was insufficient evidence to support his conviction for attempted murder, is twofold.  First, he contends that the prosecution's theory was that he attempted to kill S.L. to cover up a rape, and that because he was acquitted of rape, he should also have been acquitted of attempted murder. (Pet.'s Supplemental Response [#14] p. 2).  Alternatively, he argues that S.L.'s wounds were not serious, suggesting that the attacker merely intended to hurt her, but not kill her.  These arguments lack merit.  First, the fact that petitioner was acquitted of rape has no bearing on his conviction for attempted murder, as there is nothing inconsistent or repugnant in the two verdicts.  Nor is there any repugnancy between the acquittal of assault pursuant to PL § 120.10-4 and the conviction for assault under PL § 120.10-1.

As for his argument concerning the sufficiency of the evidence, the law in New York is well settled:

> The standard for reviewing the legal sufficiency of evidence in a criminal case is whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential

> elements of the crime beyond a reasonable doubt" (*Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 [emphasis in original] ).

*People v. Contes*, 60 N.Y.2d 620, 621, 467 N.Y.S.2d 349, 349 - 350 (1983). A person is guilty of attempted murder in the second degree when with intent to cause the death of another person, he attempts to cause the death of such person. Penal Law § § 110.00, 125.25. Here, the evidence established that petitioner beat and then repeatedly stabbed the victim in the chest and neck. Petitioner then left to go to work, leaving the victim alone in an empty house where she almost bled to death. The victim unequivocally identified petitioner, whom she had known for over twenty years, as the man who attacked her. The victim's blood was found on petitioner's shirt, and petitioner's shirt button was found on a bloody pillow at the crime scene. Consequently there was more than sufficient evidence to support a conviction for attempted murder, and the fact that appellate counsel failed to challenge the sufficiency of that evidence does not establish ineffective assistance of counsel.

The Court also finds no merit to petitioner's argument that Judge D'Amico's jury instructions should have been challenged on appeal as being incorrect. With regard to the instructions concerning attempted murder, petitioner contends that the instructions "dilute[d] the jury's burden to find the homicidal inten[t] clearly." (Supplementary Response [#14] p. 3) Petitioner states that, "the charge confuses reasonable jurors in its implication that the petitioner's conduct may *come near* to the objective under the present circumstances, and will satisfy the statutory requirements." (Id. at pp. 3-4) (emphasis added). In other words, petitioner contends that the jury charge suggested to the jurors that they could convict him of attempted murder, even if they found that he

16

only intended to "hurt and to torture, or maim the victim". (*Id*. at 4).  The Court disagrees.  Judge D'Amico's instruction in this regard was as follows:

> Now, under our law, a person is guilty of an attempt to commit a crime when with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime.  Again, intent means conscious objective or purpose.  Thus, a person acts with intent to commit a crime when his conscious objective or purpose is to commit that crime.  Conduct which tends to effect the commission of the crime means conduct which comes dangerously close or very near to the completion of the intended crime.  If a person intends to commit a crime and engages in conduct which carries his purpose forward within dangerous proximity to the completion of the intended crime, he is guilty of an attempt to commit that crime.  It does not matter that the intended crime was not actually completed.  The person's conduct must be directed toward the accomplishment of the intended crime.
>
> ***
>
> In order for you to find the defendant guilty of an attempt to commit the crime of Murder in the 2nd Degree, the People are required to prove from all of the evidence in the case beyond a reasonable doubt both of the following two elements: First, that . . . the defendant, James Thomas, intended to commit the crime of Murder in the 2nd Degree.  And the second element that the People are required to prove is that the defendant engaged in conduct which tends to effect the commission of that crime.

(429-30; see also 431)  The instruction clearly and accurately set forth the requirement that the jury find beyond a reasonable doubt that petitioner intended to kill S.L., not merely hurt, torture, or maim her.

Petitioner also contends that Judge D'Amico's instructions on the two types of Assault in the First Degree, PL § § 120.10(1) and 120.10(4), were confusing, and that the verdict was repugnant. (*See*, Supplementary Response [#14] p. 4)  Frankly, it appears that petitioner's arguments in this regard arise from his own misunderstanding of the differences between the two types of assault charged. (*See, e.g.*, Petition [#1], addendum ¶ 3: "[T]he assault charge language . . . advised the jury that they don't have

17

to have intent to cause serious physical injury, but they had to have rape.  However, the jury acquitted on the rape charge and, never-the-less, assisted by this lessened standard, convicted on the assault.")  In any event, the Court has already found that the verdict was not repugnant, and upon reviewing Judge D'Amico's instructions on the two assault charges, finds that they were not erroneous or confusing. (433-39, 455-61)[7]

Finally, petitioner contends that appellate counsel was ineffective for failing to argue on appeal that trial counsel was ineffective.  Petitioner's allegations in this regard concerning trial counsel are largely vague and conclusory. (*See, e.g.*, Petition [#1], addendum ¶ 5: "Counsel was wholly ineffective, unprepared, lacking in legal knowledge, failed to assert viable defenses, make appropriate and compelling objections . . . .")  Petitioner's most insistent and cogent argument is that trial counsel was somehow ineffective because he failed to keep the audio tape of S.L.'s Emergency 911 calls from being introduced into evidence.[8]  However, apart from making vague assertions that the tape was somehow changed between the first and second trials, of which there is no proof, petitioner has not shown that the admission of the tape was erroneous.  Petitioner suggests that there was not a proper foundation for the tape's admission, but the Court disagrees.  Petitioner also contends, without legal support, that the tape should have been precluded as a sanction, because of the mix-up over the tape's existence at the first trial.  However, there is no indication in the record that the prosecution did anything improper regarding the tape.  The defense had adequate

---

[7]Trial counsel made no objection to any of the trial court's jury instructions.

[8]Inconsistently, petitioner contends that the 911 tape was actually helpful to his case, since it established that S.L.'s wounds were not serious: "[T]he tape showed her lack of complaint of injuries, request for an ambulance, or any distress during the calls". (Petition [#1] addendum ¶ 5)

notice that the prosecution would use the tape at the second trial, and was in no way prejudiced by the events at the first trial. In short, petitioner has not explained why the admission of the tape was improper. Petitioner also suggests that trial counsel failed to properly present an alibi defense, but as the trial court noted when denying his CPL § 440 motion, he has offered no proof to establish an alibi. (*See also*, Petitioner's CPL § 440 memorandum, p. 12: "The evidence in the case against the defendant was strong, necessarily limiting the available defenses.") In sum, petitioner has not shown that the foregoing arguments concerning alleged errors at trial were clearly stronger than the issues that appellate counsel actually raised on appeal.

For all of the foregoing reasons, the Court finds that the petitioner has failed to demonstrate that appellate counsel's performance fell below the standard set forth in *Strickland*. Consequently, petitioner has not shown that the decision of the Appellate Division, Fourth Department, denying his coram nobis petition, resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law. Moreover, petitioner may not use appellate counsel's supposed ineffectiveness to establish cause for his failure to exhaust his state court remedies as to his other claims, which lack merit in any event. Nor has petitioner demonstrated prejudice, or that the failure to hear his claim will result in a fundamental miscarriage of justice.

## CONCLUSION

Petitioner's application for a writ of habeas corpus is denied, and the petition is dismissed. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and leave to appeal to the

Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253.

    So Ordered.

Dated: Rochester, New York
      March 3, 2006

                        ENTER:

                        /s/ Charles J. Siragusa
                        CHARLES J. SIRAGUSA
                        United States District Judge